WILLIAM B. COOPER, Jr., Plaintiff, *against* THE HONG KONG AND SHANGHAI BANKING CORPORATION, Defendant.

(Decided May 15th, 1885).

Defendant, a foreign banking corporation, received as security for the payment to itself of certain bills of exchange, bills of lading of goods shipped by the drawers of the bills of exchange from a foreign port to New York, which goods were intended to be sold in New York and the proceeds applied to the payment of the bills of exchange; for which purpose the shippers requested defendant to hand the shipping documents to plaintiff, the agent of the shippers in New York, he to undertake to hold the goods on defendant's account and pay defendant the proceeds when realized; and defendant's agent in New York accordingly delivered the bills of lading to plaintiff upon plaintiff executing and delivering to him an instrument in writing by which plaintiff agreed to store the merchandise as defendant's property and deliver the warehouse receipts therefor together with the policies of insurance on the goods to defendant's agent, and which recited that the intention of the arrangement was " to protect and preserve unimpaired the lien of the bank or its agent on said merchandise." Having thus obtained the bills of lading, plaintiff paid the freight and other charges on the goods necessary to get possession of them and incident to their landing and storage, and stored and took warehouse receipts for them, but instead of delivering the receipts to defendant's agent, plaintiff kept them. The goods could not be sold for an amount sufficient to pay the bills of exchange and also the amount of freight and other expenses paid by plaintiff; and while they still remained in store, the shippers and their branch house upon whom the bills of exchange were drawn became insolvent, without making any provision for the payment of the bills. *Held*, that plaintiff had no lien superior to that of defendant upon the goods for his advances to pay freight, even if he used his own money in paying the freight; since in so doing he did not act as the agent of the defendant, but as the agent of the shippers, in the performance of their duty to defendant to make such payment.

APPEALS from a judgment of this court entered upon the report of a referee.

The facts are stated in the opinion.

*John M. Bowers*, for plaintiff.

*Amasa A. Redfield*, for defendant.

VAN HOESEN, J.—When Mr. Cooper obtained from Mr. Townsend, the agent of the Hong Kong and Shanghai Banking Corporation, the bills of lading for the goods aboard the Henrietta and the Continental, he agreed that he would store the merchandise as the bank's property, and deliver the warehouse receipts therefor together with the policies of insurance on the goods to Mr. Townsend as the agent of the bank. The intention of that agreement was "to protect and preserve unimpaired the lien of the bank or its agent on said merchandise." Mr. Cooper refuses to carry out that agreement, and insists that the lien of the bank shall be displaced and made secondary to a lien of his own. The question here is, Is Mr. Cooper entitled to a lien superior to that of the bank?

The bank acquired its lien in the following manner: Martin, Dyce and Co. of Manilla, the shippers of the merchandise, drew certain bills of exchange upon Martin, Turner and Co. of Glasgow, and procured the cash upon them from the bank, giving to the bank as collateral security the bills of lading that have been mentioned. This transfer of the bills of lading made the bank the pledgee of the goods. The first lien upon the merchandise was that of the bank as pledgee, and it was this lien that Mr. Cooper agreed to "protect and preserve unimpaired." Mr. Cooper contends, however, that that lien has been postponed to his, in consequence of the occurrence that I am now to state. When the goods arrived at the port of New York, it became necessary to pay the freight upon them, in order to obtain them from the ships. If the bank, availing itself of the

bills of lading that it held, had attempted to get possession
of the merchandise, it would have been compelled first to
pay the freight.    But having paid it, it could have reclaimed
the amount from Martin, Dyce and Co. or it could have
sold the goods for its reimbursement.    So also, the bank
could have procured policies of insurance against fire, and
have held Martin, Dyce & Co. personally, or have sold the
goods, to repay itself the amount it had expended in pre-
miums.    But the duty of paying freight, insurance and the
other charges incident to the landing and the storing of the
goods really rested upon Martin, Dyce and Co., and that
firm was liable to the bank for any outlays it might have
made in paying such expenses.    This being the situation of
the bank and Martin, Dyce & Co. with respect to each
other, Martin, Dyce & Co., through Martin, Turner & Co.
the Glasgow branch of the firm, requested Mr. Cooper,
who was their agent in New York, to act for them upon
the arrival of the goods at New York.    Mr. Cooper was
to do what his principals themselves would have done, or
been legally bound to do, if personally present at the port
of destination.    He was acting for Martin, Dyce & Co., and
performing the duty which their contract with the bank
imposed upon them.    It was expected that the goods would be
sold, and that out of the proceeds of the sale, the bills of ex-
change held by the bank should be paid, as well as the freight,
the insurance and other expenses that might be incurred.    The
bank was not asked to surrender its lien, but to place Mar-
tin, Dyce & Co. in position to raise the money with which the
claim of the bank, the freight and the other charges might
be paid.    To carry out this design, Martin, Turner & Co.
sent to the bank a request in writing that the shipping doc-
uments should be handed to Mr. Cooper, who, in exchange
therefor, " will give you a letter of obligation, undertaking
to hold the goods on your account, and pay you the pro-
ceeds when realized."    When Cooper obtained the shipping
documents, as he did on the strength of the request of
Martin, Turner & Co., he executed the agreement that has
been spoken of, by which he undertook that "the lien of

the bank should be unimpaired," and that he would deliver the warehouse receipts and the policies of insurance to Townsend, the agent of the bank, "to be retained by him until Martin, Turner & Co.'s acceptances against said merchandise shall have been paid or satisfactorily provided for." When Mr. Cooper obtained the shipping documents, he paid the freight and various other charges, stored the goods, and took warehouse receipts for them, but kept the receipts instead of fulfilling his agreement to deliver them to Townsend, the agent of the bank. He made many efforts to sell the goods, but could not find a market for them, and whilst the goods were still in store Martin, Dyce and Co. failed, as did the Glasgow branch of the firm, which bore the style of Martin, Turner & Co., without making any provision for the payment of the bank's claim. The goods could not be sold for an amount sufficient to pay the bank, and to pay the freight with the other expenses. When the warehouse receipts were demanded of him, Cooper refused to surrender them on the ground that he had with his own moneys paid the freight and other charges, and that he had thereby acquired a lien upon the goods that took precedence of the lien of the bank.

It may be taken as true that Mr. Cooper did use his own money in paying the freight, but that alone does not give him a lien superior to that of the bank. He made the payment, not at the request of the bank, nor as its agent, but in the performance of his duty to his principals, Martin, Dyce & Co. The advances that he made were to enable Martin, Dyce & Co. to get the goods, that they might be sold. Certainly no action for money paid could be maintained by him against the bank, nor did the bank become his debtor by reason of his advances. The lien that he asserts is not, therefore, a right to detain the goods till the bank has paid him what it owes him, for, as I have said, it owes him nothing. Martin, Dyce & Co. do owe him for what he expended on their account, and for that indebtedness he has a lien that would justify his detention of the property from them; but acting on behalf of Martin, Dyce & Co.,

and in the performance of a duty that devolved upon them, he has no more right than they would have to assert a lien in hostility to the rights of the bank.

It is said that the bank made Cooper its trustee or agent, inasmuch as it intrusted him with the shipping documents, knowing that he intended to pay the freight, and incur other expenses the benefit of which it was to receive. There is no force in that argument, because he came as the representative of Martin, Dyce & Co., and acted throughout in that capacity. It is true that the bank was greatly advantaged by the acts that he did, and by the outlays that he made, but those advantages were merely incidental to the performance by him of his duty to his principals. He did what they were bound to do, and paid what it was theirs to pay. It was not the duty of the bank to assume that he and not Martin, Dyce & Co. would advance the money for freight, or to inquire as to the state of the accounts between him and his principals. If it was the duty of Martin, Dyce & Co. to pay the freight, their default, though it led their agent to volunteer an advance of money in their behalf, cannot be made the means of defeating or postponing the pre-existing lien of the bank. I can not discover anything in the evidence to warrant the conclusion that the bank made Cooper its agent. It merely treated him as the agent of Martin, Dyce & Co., who was to recognize their lien, and pay the bills of exchange.

Again, it is said that in making his advances Cooper relied upon the goods for reimbursement. It was perfectly proper for him to do so, as between himself and Martin, Dyce & Co. If he and his principals were the only parties in interest, there is no doubt that he could, would and should have protected himself for his advances by holding or by selling the merchandise. But he had no legal right to assume that his advances would entitle him to a lien that would displace the lien of the bank; and if he did rely upon such an assumption, he made a mistake of law. He knew perfectly well that the bank held the bills of lading as security for its advances to the consignors, and that

he had undertaken to protect that security. Of course, no one supposes that his misunderstanding of his legal rights could give priority to his lien.

I think the judgment should be modified by deducting therefrom $15,977.41, the freight paid by Mr. Cooper, and as to the residue it should be affirmed, with costs to the defendant.

LARREMORE and J. F. DALY, JJ., concurred.

Judgment affirmed, with costs to defendant.